# EXHIBIT I

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| STOCKDALE INVESTMENT | § | |
| GROUP, INC. D/B/A | § | |
| STOCKDALE | § | |
|     *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:18-cv-02949 |
| | § | |
| STOCKDALE CAPITAL PARTNERS, | § | |
| LLC; STOCKDALE CAPITAL | § | |
| PARTNERS RE FUND I GP, LLC; | § | |
| STOCKDALE CAPITAL PARTNERS | § | |
| REAL ESTATE FUND, LP; | § | |
| STOCKDALE CAPITAL RE | § | |
| INVESTMENTS, LLC; STOCKDALE | § | |
| CAPITAL RE, LLC; and STOCKDALE | § | |
| CAPITAL SERVICES, LLC | § | |
|     *Defendants*. | § | |

**COMBINED PROPOSED JURY
<u>INSTRUCTIONS, DEFINITIONS AND INTERROGATORIES</u>**

**AGREED INSTRUCTION NO. 1:**

**MEMBERS OF THE JURY:**

It is my duty and responsibility to instruct you on the law you are to apply in this case. The law contained in these instructions is the only law you may follow. It is your duty to follow what I instruct you the law is, regardless of any opinion that you might have as to what the law ought to be.

If I have given you the impression during the trial that I favor either party, you must disregard that impression. If I have given you the impression during the trial that I have an opinion about the facts of this case, you must disregard that impression. You are the sole judges of the facts of this case. Other than my instructions to you on the law, you should disregard anything I may have said or done during the trial in arriving at your verdict.

You should consider all of the instructions about the law as a whole and regard each instruction in light of the others, without isolating a particular statement or paragraph.

The testimony of the witnesses and other exhibits introduced by the parties constitute the evidence. The statements of counsel are not evidence; they are only arguments. It is important for you to distinguish between the arguments of counsel and the evidence on which those arguments rest. What the lawyers say or do is not evidence. You may, however, consider their arguments in light of the evidence that has been admitted and determine whether the evidence admitted in this trial supports the arguments. You must determine the facts from all the testimony that you have heard and the other evidence submitted. You are the judges of the facts, but in finding those facts, you must apply the law as I instruct you.

You are required by law to decide the case in a fair, impartial, and unbiased manner, based entirely on the law and on the evidence presented to you in the courtroom. You may not be influenced by passion, prejudice, or sympathy you might have for the plaintiffs or the defendant in arriving at your verdict.

**AGREED INSTRUCTION NO. 2:**

Plaintiff has the burden of proving his case by a preponderance of the evidence. Defendant has the burden of proving its defenses by a preponderance of the evidence.

To establish by a preponderance of the evidence means to prove something is more likely so than not so.  If you find that Plaintiff has failed to prove any element of his claim by a preponderance of the evidence, then he may not recover on that claim.  If you find that Defendant has failed to prove any element of its defenses by a preponderance of the evidence, you must find in favor of Plaintiff on that issue.

**AGREED INSTRUCTION NO. 3:**

The evidence you are to consider consists of the testimony of the witnesses, the documents and other exhibits admitted into evidence, and any fair inferences and reasonable conclusions you can draw from the facts and circumstances that have been proven.

Generally speaking, there are two types of evidence.  One is direct evidence, such as testimony of an eyewitness.  The other is indirect or circumstantial evidence.  Circumstantial evidence is evidence that proves a fact from which you can logically conclude another fact exists.  As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

**AGREED INSTRUCTION NO. 4:**

You alone are to determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of the witnesses, you may consider the witness's manner and demeanor on the witness stand, any feelings or interest in the case, or any prejudice or bias about the case, that he or she may have, and the consistency or inconsistency of his or her testimony considered in the light of the circumstances.  Has the witness been contradicted by other credible evidence?  Has he or she made statements at other times and places contrary to those made here on the witness stand?  You must give the testimony of each witness the credibility that you think it deserves.

Even though a witness may be a party to the action and therefore interested in its outcome, the testimony may be accepted if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.

You are not to decide this case by counting the number of witnesses who have testified on the opposing sides.  Witness testimony is weighed; witnesses are not counted.  The test is not the relative number of witnesses, but the relative convincing force of the evidence.  The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that witness.

**PLAINTIFF'S INSTRUCTION NO. 5:**

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely on it.

**AGREED INSTRUCTION NO. 6:**

Certain testimony has been presented to you through a deposition.  A deposition is the sworn, recorded answers to questions a witness was asked in advance of the trial.  Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness's testimony may be presented, under oath, in the form of a deposition.  Sometime before trial, attorneys representing the parties in this case questioned this witness under oath.  A court reporter was present and recorded the testimony.   The questions and answers have been read or shown to you.  This deposition testimony is entitled to the same consideration and is to be judged by you as to credibility and weighed and otherwise considered by you in the same way as if the witness had been present and had testified from the witness stand in court.

**AGREED INSTRUCTION NO. 6:**

In determining the weight to give to the testimony of a witness, consider whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony given at the trial.

A simple mistake by a witness does not necessarily mean that the witness did not tell the truth as he or she remembers it. People may forget some things or remember other things inaccurately. If a witness made a misstatement, consider whether that misstatement was an intentional falsehood or simply an innocent mistake. The significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

**AGREED INSTRUCTION NO. 7:**

The fact that a person brought a lawsuit and is in court seeking damages creates no inference that the person is entitled to a judgment. Anyone may make a claim and file a lawsuit. The act of making a claim in a lawsuit, by itself, does not in any way tend to establish that claim and is not evidence.

**AGREED INSTRUCTION NO. 8:**

Do not let bias, prejudice or sympathy play any part in your deliberations. A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.

**CONTESTED INSTRUCTION NO. 1:**

You are instructed as follows:

The term "Plaintiff" or "Stockdale Investment Group" means Stockdale Investment Group, Inc. d/b/a Stockdale.

The term "Defendants" or "Stockdale Capital" means Stockdale Capital Partners, LLC; Stockdale Capital Partners RE Fund I GP, LLC; Stockdale Capital Partners Real Estate Fund, LP; Stockdale Capital Partners RE Investments, LLC; Stockdale Capital RE, LLC; Stockdale Capital Services, LLC; Stockdale Management, LLC; Stockdale/SG, LLC and Stockdale Acquisitions, LLC

**PARTIALLY CONTESTED INSTRUCTION NO. 2:**

Plaintiff Stockdale Investment Group asserts claims against Defendants Stockdale Capital for trademark infringement and unfair competition.

**Definition of Trademark**

A trademark is a word, a name, a symbol, a device, or a combination of them indicating the source of goods or services. The owner of a trademark has the right to exclude others from using that trademark subject to certain defenses.

The purpose of trademark law is to prevent confusion among consumers about the source of products and to permit trademark to show ownership of their products and control their product's reputation.

Plaintiff claims that Defendants infringed Plaintiff's trademark "Stockdale" for commercial real estate  services by using the term "Stockdale" in association with Defendants' commercial real estate services. Defendants deny that Plaintiff has a valid trademark or that Defendants' use of "Stockdale" causes a likelihood of confusion.

Authority:

(Seventh Circuit Pattern Jury Instruction No. 13.1.1, Trademark/Trade Dress Infringement -- Nature of Claim; 15 U.S.C. § 1127; *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 536 (5th Cir. 1998); 3A Fed. Jury Prac. & Instr. § 159:41 (6th ed.))

**CONTESTED INSTRUCTION NO. 3:**

**(Instruction on Trademark Claims)**

 ***Plaintiff Stockdale Investment Group's Claims***. Plaintiff Stockdale Investment Group asserts three claims: (1) federal trademark infringement; (2) federal unfair competition; and (3) Texas common law unfair competition. Each of these claims requires proof of the same elements which I will explain in detail below.[1] For each of its claims, Stockdale Investment Group asserts that it is owner of the trademark STOCKDALE in connection with real estate design, construction, and property management.[2] Stockdale Investment Group must prove each element of each of its claims by a preponderance of the evidence.

 ***Purpose of Trademark Protection.*** The purpose of trademark laws is to protect the ability of consumers to distinguish among competing products.[3] The purpose is not to prevent all unauthorized uses.[4] Trademark laws must be construed in the light of a strong federal policy in favor of vigorously competitive markets.[5] The trademark laws balance three often-conflicting goals: (1) protecting the public from being misled about the nature and source of goods and services, so that the consumer is not confused or misled in the market, (2) protecting the rights of

---

[1] *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 236 (5th Cir. 2010) ("A trademark infringement claim and unfair competition action under Texas common law presents essentially no difference in issues than those under federal trademark infringement actions."(internal quotations omitted)); *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780, 112 S. Ct. 2753, 2763, 120 L. Ed. 2d 615 (1992) ("Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical—is there a 'likelihood of confusion.'" (internal quotations omitted)); *Marathon Mfg. Co. v. Enerlite Products Corp.*, 767 F.2d 214, 217 (5th Cir. 1985) ("As a general rule, the same facts which would support an action for trademark infringement would also support an action for unfair competition."); *Phoenix Entm't Partners LLC v. Boyte*, 247 F. Supp. 3d 791, 796 (S.D. Tex. 2017) (noting same elements for federal trademark infringement and unfair competition claims).

[2] (Doc. 53, ¶ 17).

[3] *Springboards to Educ., Inc. v. Houston Indep. Sch. Dist.*, 285 F. Supp. 3d 989, 993 (S.D. Tex. 2018) (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 774 (1992)).

[4] *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1052 (10th Cir. 2008).

[5] *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 269 F.3d 114, 119 (2d Cir. 2001).

a business to identify itself to the public and its reputation in offering goods and services to the public, and (3) protecting the public interest in fair competition in the market.[6]

**Definition of a Trademark.** A trademark is any word, symbol, or device, or any combination thereof, used by a person to identify and distinguish that person's goods from those of others and to indicate the source of the goods.[7] A service mark is any word, name, symbol, or device, or any combination thereof, used by a person to identify and distinguish the services of one person from the services of others and to indicate the source of the services.[8]

Plaintiff Stockdale Investment Group and Defendant Stockdale Capital Partners are both "persons" as that term is used in these instructions.[9] Trademarks and service marks are both "marks" under relevant law.[10] Your analysis should proceed the same whether you view the term STOCKDALE as a trademark or a service mark.[11]

**Elements of Stockdale Investment Group's Claims.** To prove its claim, Stockdale Investment Group must prove the following elements by a preponderance of the evidence:

(1) STOCKDALE is a legally protectable mark which Stockdale Investment Group owns; and

---

[6] Ninth PJC § 15.5.

[7] 15 U.S.C. § 1127; Ninth PJC § 15.2.

[8] 15 U.S.C. § 1127; Ninth PJC § 15.2.

[9] 15 U.S.C. § 1127.

[10] 15 U.S.C § 1127.

[11] *Savannah Coll. of Art & Design, Inc. v. Sportswear, Inc.*, 872 F.3d 1256, 1261 (11th Cir. 2017), *cert. denied*, 139 S. Ct. 57, 202 L. Ed. 2d 20 (2018); *Serv. Merch. Co. v. Serv. Jewelry Stores, Inc.*, 737 F. Supp. 983, 999 (S.D. Tex. 1990); *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1194 (9th Cir. 2009); *Island Insteel Sys., Inc. v. Waters*, 296 F.3d 200, 206 (3d Cir. 2002) ("[W]e adopt the common usage of the term 'trademark' to refer generically to the entire field of trademarks, service marks, trade names, and trade dress." (internal quotations omitted)).

(2) Stockdale Capital Partners use of the STOCKDALE mark creates a likelihood of confusion as to source, affiliation, or sponsorship.[12]

***Protectable Mark.*** A trademark claim cannot be sustained unless the mark is legally protectable.[13] If you find that Stockdale Investment Group has not proved by a preponderance of the evidence that its mark is protectable, then you must find for the Defendants on all claims.

---

[12] *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 450 (5th Cir. 2017); *All. for Good Gov't v. Coal. for Better Gov't*, 901 F.3d 498, 505 (5th Cir. 2018).

[13] *Viacom Int'l v. IJR Capital Investments, L.L.C.*, 891 F.3d 178, 185 (5th Cir. 2018).

**CONTESTED INSTRUCTION NO. 4:**

Plaintiff Stockdale Investments accuses Defendants Stockdale Capital of trademark infringement based on Defendants' use of the term "Stockdale" in connection with its services. Stockdale Investments accuses Defendants of three different violations of its rights in its trademark 1) trademark infringement under the Lanham Act, 2) unfair competition under the Lanham Act, and 4) common law trademark infringement.  These are three theories of liability and I will instruct you as to each of them.

**Trademark Infringement Elements**

Plaintiff claims that Defendants infringed Plaintiff's trademark. To succeed on this claim, Plaintiff must prove the following things by a preponderance of the evidence:

1.      Plaintiff Stockdale Investment Group is the owner or senior user of the term "Stockdale."

2.      Stockdale is a valid trademark.

3.      Defendants' use of the name Stockdale in connection with their services is likely to cause confusion as to the source, origin, sponsorship or approval of Defendants' services.

If you find that Plaintiff has proved each of these things by a preponderance of the evidence, then you must find for Plaintiff. However, if Plaintiff did not prove each of these things by a preponderance of the evidence, then you must find for Defendants.

Authority:

(Seventh Circuit Pattern Jury Instruction No. 13.1.2, Trademark/Trade Dress Infringement -- Elements)

**CONTESTED INSTRUCTION NO. 5:**

Plaintiff Stockdale Investment Group must show by a preponderance of the evidence that Stockdale is a protectable mark owned by Plaintiff Stockdale Investment Group.

Plaintiff owns Stockdale as a trademark if Plaintiff used the term in a manner that allowed consumers to identify the term with Plaintiff or its services before Defendants began to use Stockdale in association with their services.

Authority:

(Seventh Circuit Pattern Jury Instruction No. 13.1.2.1, Trademark/Trade Dress Infringement – Unregistered and Contestable Marks)

**CONTESTED INSTRUCTION NO. 6:**

A valid trademark is a term that is "distinctive," which means that the term is capable of distinguishing Plaintiff's product from the products of others. A trademark is valid if it is inherently distinctive or if it has acquired distinctiveness.

Authority:

(Seventh Circuit Pattern Jury Instruction No. 13.1.2.2, Trademark/Trade Dress Infringement – Validity)

**CONTESTED INSTRUCTION NO. 7:**

A trademark is inherently distinctive if it is a "fanciful"; "arbitrary"; or "suggestive" term.

A "fanciful" term is a newly created word or parts of common words that are used in a fictitious, unfamiliar, or fanciful way. For example, "Exxon" for gasoline is a fanciful mark.

An "arbitrary" term is a common term used in an unfamiliar way. For example, "Apple" for computers is an arbitrary mark.

A "suggestive" term implies some characteristic or quality of the product. If the consumer must use imagination, reflection, or additional reasoning to understand the meaning of the mark as used with the product, then the mark is suggestive. For example, "Coppertone" for suntan lotion is a suggestive mark because it is suggestive of suntanned skin.

Authority:

(Seventh Circuit Pattern Jury Instruction No. 13.1.2.2.1, Trademark– Inherent Distinctiveness)

**CONTESTED INSTRUCTION NO. 8:**

Another type of valid trademark is a "descriptive" term that has "acquired distinctiveness."

A "descriptive" term directly identifies or describes some characteristic or quality of the product in a straightforward way that requires no imagination or reasoning to understand the meaning of the trademark. For example, "All Bran" for cereal is a descriptive trademark because it describes a characteristic of the cereal.  A descriptive trademark can also identify the geographic location where a product is made (for example, "Omaha" for steaks) or the name of the person who makes or sells the product (for example, "Mrs. Fields" for cookies).  For example, a yellow container in the shape of a lemon is a descriptive trade dress when used as a container for lemon juice.

A descriptive trademark can be valid only if it has "acquired distinctiveness."

<u>Authority:</u>

(Seventh Circuit Pattern Jury Instruction No. 13.1.2.3, Acquired Distinctiveness)

**CONTESTED INSTRUCTION NO. 9:**

To show that the term "Stockdale" has "acquired distinctiveness," Plaintiff must prove by a preponderance of the evidence:

1. The relevant consumers identify the product or service with Plaintiff; and

2. The term "Stockdale" acquired distinctiveness before Defendants first began to use the term Stockdale.

To decide whether the term "Stockdale" has "acquired distinctiveness," you may consider the following:

1. the length and manner of Plaintiff's use of the term "Stockdale";
2. the amount and manner of advertising, promotion, and other publicity of Plaintiff's services using the term "Stockdale";
3. the sales volume of Plaintiff's services sold using the term "Stockdale";
4. nature of use of the mark or trade dress in newspapers and magazines;
5. direct consumer testimony; and
6. evidence of actual confusion

Authority:

(Seventh Circuit Pattern Jury Instruction No. 13.1.2.4, Acquired Distinctiveness; *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 541 (5th Cir. 1998); *Lady Primrose's, Inc. v. After Hours Bath Prods.*, No. 99-40753, 2000 U.S. App. LEXIS 40947, at *7 (5th Cir. 2000))

**CONTESTED INSTRUCTION NO. 10:**

When a manufacturer or seller has established a trademark by use on or in association with a product or service before anyone else, subject to certain defenses, the right to use the trademark becomes an exclusive right and the mark is that person's property. With certain exceptions, no other person can use the same or similar words, symbols, designs, or devices in any manner likely to cause confusion, mistake or deception.

Authority:

(3A Fed. Jury Prac. & Instr. § 159:41 (6th ed.))

**PLAINTIFF'S CONTESTED INTERROGATORY 1:**

**QUESTION 1**

Does Plaintiff own a trademark that is entitled to protection?

Answer Yes or No _____

Authority:

(Eleventh Circuit Pattern Jury Instruction, No. 5.13)

**PLAINTIFF'S CONTESTED INTERROGATORY 2:**

Answer Question 2 if you answered "Yes" to Question 1.  Otherwise, do not answer Question 2.

QUESTION 2

Was Plaintiff's trademark distinctive prior to the date of first use of Defendants' trademark, either because Plaintiff's trademark was inherently distinctive or because it had acquired distinctiveness?

Answer Yes or No _____

Authority:

(Eleventh Circuit Pattern Jury Instruction, No. 5.13)

**CONTESTED INSTRUCTION NO. 11:**

**(Verdict Form)**

In answering the following questions, you are instructed to refer to the instructions previously provided to you which will inform you of the law. Please pay attention to the Special Instructions that may be applicable to each question. Depending on your answers, you may not be required to answer all questions. Please consult instructions following each question to determine, based on your answer to that question, which question, if any, you should answer next.

**DEFENDANTS' CONTESTED JURY QUESTION NO. 1:**

**(Protectable Mark/Secondary Meaning)**

Do you find that Stockdale Investment Group has proved by a preponderance of the evidence that the mark STOCKDALE has acquired a secondary meaning?

Secondary meaning is achieved when, in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself.[14] Stated differently, secondary meaning arises when, because of association with a particular product or firm over a period of time, the mark has in the mind of the public come to stand as a name or identification for that product or firm."[15] Stockdale Investment Group is required to show that a significant quantity of the consuming public understand the name STOCKDALE as referring exclusively to Stockdale Investment Group.[16] The focus of the inquiry is on the public's mental association between the mark STOCKDALE and Stockdale Investment Group.[17]

The burden to prove secondary meaning or acquired distinctiveness is substantial and requires a high degree of proof.[18] In determining whether Stockdale Investment Group has met its substantial burden to prove by a preponderance of the evidence that a significant quantity of the consuming public understands the name STOCKDALE as referring exclusively to Stockdale Investment Group, you should consider the following factors:

(1) Length and manner of use of the mark;
(2) Volume of sales;
(3) Amount and manner of advertising;
(4) The nature of use of the mark in newspapers and magazines;
(5) Consumer-survey evidence;
(6) Direct consumer testimony; and
(7) Stockdale Capital Partner's intent in copying the mark.[19]

In considering these factors, your focus should be on how the evidence demonstrates that the meaning of the mark has been altered in the minds of consumers.[20] A period of continuous use of the mark alone does not establish secondary meaning.[21] As to advertising, the relevant

---

[14] *Bd. of Regents of the Univ. of Houston Sys. on Behalf of the Univ. of Houston Sys. & Its Member Institutions v. Houston Coll. of Law, Inc.*, 214 F. Supp. 3d 573, 583 (S.D. Tex. 2016).

[15] *Test Masters Educ. Services v. Singh*, 46 Fed. Appx. 227 (5th Cir. 2002).

[16] *Test Masters Educ. Services v. Singh*, 46 Fed. Appx. 227 (5th Cir. 2002).

[17] *Bd. of Supervisors for Louisiana State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 476 (5th Cir. 2008).

[18] *Test Masters Educ. Services v. Singh*, 46 Fed. Appx. 227 (5th Cir. 2002).

[19] *Bd. of Supervisors for Louisiana State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 476 (5th Cir. 2008); *T-Mobile US, Inc. v. AIO Wireless LLC*, 991 F. Supp. 2d 888, 905 (S.D. Tex. 2014).

[20] *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 248 (5th Cir. 2010).

[21] *Half Price Books, Records, Magazines, Inc. v. Barnesandnoble.com, LLC*, 2003 WL 23175436, at *4 (N.D. Tex. Aug. 15, 2003); *Bank of Texas v. Commerce Southwest, Inc.*, 741 F.2d 785, 788 (5th Cir.1984)).

question is not the *extent* of the promotional efforts, but their *effectiveness* in altering the meaning of the mark to the consuming public.[22] Similarly, evidence of volume of sales or business must be accompanied by evidence of how the sales impacted the meaning of the mark to the consuming public.[23]

Although survey evidence is not strictly required, courts express a preference for an objective survey of the public's perception of the mark at issue, and the lack of survey can create a significant hindrance to meeting the standard of proof required.[24]

Answer "Yes" or "No:

Answer:_____

If you answered Yes to Question 1, please proceed to Question 2.

If you answered No to Question 1, please proceed to the last page.

---

[22] *See Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 545 (5th Cir. 2015); *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 248 (5th Cir. 2010); *Sec. Ctr., Ltd. v. First Nat. Sec. Centers*, 750 F.2d 1295, 1301 (5th Cir. 1985); *Honestech, Inc. v. Sonic Sols.*, 725 F. Supp. 2d 573, 579–80 (W.D. Tex. 2010); *Half Price Books, Records, Magazines, Inc. v. Barnesandnoble.com, LLC*, 2003 WL 23175436, at *4 (N.D. Tex. Aug. 15, 2003); *Boulle, Ltd. v. De Boulle Diamond & Jewelry, Inc.*, 2014 WL 4413603, at *10 (N.D. Tex. July 31, 2014), *report and recommendation adopted*, 2014 WL 4261994 (N.D. Tex. Aug. 29, 2014).

[23] *Honestech, Inc. v. Sonic Sols.*, 725 F. Supp. 2d 573, 579–80 (W.D. Tex. 2010); *Boulle, Ltd. v. De Boulle Diamond & Jewelry, Inc.*, 2014 WL 4413603, at *10 (N.D. Tex. July 31, 2014), *report and recommendation adopted*, 2014 WL 4261994 (N.D. Tex. Aug. 29, 2014); *Half Price Books, Records, Magazines, Inc. v. Barnesandnoble.com, LLC*, 2003 WL 23175436, at *4 (N.D. Tex. Aug. 15, 2003).

[24] *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 248 (5th Cir. 2010); *Viacom Int'l, Inc. v. IJR Capital Invs., L.L.C.*, 891 F.3d 178, 191 (5th Cir. 2018); *Sec. Ctr., Ltd. v. First Nat. Sec. Centers*, 750 F.2d 1295, 1301 (5th Cir. 1985).

**DEFENDANTS' CONTESTED JURY QUESTION NO. 2:**

**(First Use)**

Do you find that Stockdale Investment Group has proved by a preponderance of the evidence that the mark STOCKDALE acquired a secondary meaning prior to the date of Defendants' first use of the name STOCKDALE?[25]

Answer "Yes" or "No:

Answer:_____

If you answered Yes to Question 2, please proceed to Question 3.

If you answered No to Question

---

[25] ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS § 10.2 (2019)

**CONTESTED INSTRUCTION NO. 12:**

Plaintiff must prove by a preponderance of the evidence that Defendants used the term "Stockdale" in a manner that is likely to cause confusion as to the source, origin, sponsorship or approval of Defendant's product.

Plaintiff must prove a likelihood of confusion among people who buy or use, or consider buying or using, the parties' product or services or similar products or services.

In deciding this, you should consider the following:

1. **The strength of the Plaintiff's trademark**. You are to consider the relative "distinctiveness" of each mark. The strength or distinctiveness of a mark determines the amount of protection the mark receives. Stronger marks are widely protected, whereas weaker marks are entitled only to narrow protection.

2. **The similarity between Plaintiff's and Defendants' trademark**. A mark must be viewed in its entirety and in the context in which it is used. It is the overall impression that counts; marks are not to be dissected to compare individual features. However, more attention should be given to the dominant portion of the marks. Consider the "overall impression," sight, sound and appearance, of the marks, and be careful not to focus excessively on one feature alone. The greater the similarity in the marks, the greater the likelihood of confusion.

3. **The similarity between Plaintiff's and Defendant's products or services**. If the products or services provided by the parties are closely related, a lesser degree of similarity between the marks may give rise to a likelihood of confusion. In other words, in evaluating a likelihood of confusion, as the similarity between the products goes up, less similarity is required between the competing marks.

4. **The identity of retail outlets and purchasers**. Consider is whether the same people use both Plaintiff's and Defendants' products and services.

5. **The similarity of advertising media used**.

6. **Whether Defendant intended to use Plaintiff's trademark**. Consider whether Defendants intended to trade on the reputation of Plaintiff when selecting its name. You should consider the Defendants' motive or reason for choosing the term "Stockdale." Plaintiff does not have to show that the Defendants copied its name with the intention of passing off its products or services as Plaintiff's products or services, but if you find that the Defendants chose the tern "Stockdale" with the intention of exploiting the popular recognition, if any existed, in the name "Stockdale Capital Group," then this is evidence of a likelihood of confusion.   Proof of intent to confuse the public is not necessary to a finding of a likelihood of confusion

7.      **Whether Defendant's use of the term Stockdale has led to instances of actual confusion among purchasers or potential purchasers about the source origin, sponsorship or approval of Defendants' product or services**. The actual confusion that is meaningful in a trademark case is evidence that demonstrates actual confusion as to either the source or the quality of one party's services for the other, due to use of the same or similar names for the goods or services in question. The confusion is not limited to only customers but can include vendors, suppliers, end users, and other business contacts confused by the two entities. Actual confusion is the best evidence of confusion but, because the presence of actual confusion is usually difficult to show, a finding of actual confusion is not required for a finding of likelihood of confusion.

8.      **The degree of care that purchasers or potential purchasers are likely to exercise in buying or considering whether to buy the parties' products or services**. Consider is the degree of care that consumers use in the commercial real estate area use. Even sophisticated purchasers can be confused by very similar marks. In evaluating the discrimination and degree of care, you must consider confusion with respect to users as well as actual purchasers.

The weight to be given to each of these factors is up to you to determine. No particular factor or number of factors is required to prove likelihood of confusion.  You do not need to find that a majority of the factors have been shown to find there is a likelihood on confusion.

Authority:

(Seventh Circuit Pattern Jury Instruction No. 13.1.2.3, Likelihood of Confusion – Factors; *Elvis Presley Enterprises, Inc. v. Capece*, 141 F.3d 188, 194 (5th Cir. 1998); *Exxon Corp. v. Tex. Motor Exch.*, 628 F.2d 500, 505 (5th Cir. 1980))

**PLAINTIFF'S CONTESTED INTERROGATORY 3:**

Answer Question 3 if you answered "Yes" to Question 2.  Otherwise, do not answer Question 3.

 Does Defendants' use of the term" Stockdale" cause a likelihood of confusion with Plaintiff's use of "Stockdale"?

Answer Yes or No _____

Authority:

(Eleventh Circuit Pattern Jury Instruction, No. 5.13)

**DEFENDANTS' CONTESTED JURY QUESTION NO. 3:**

**(Likelihood of Confusion)**

Do you find that Stockdale Investment Group has proved by a preponderance of the evidence that Stockdale Capital Partner's use of the term STOCKDALE causes a likelihood of confusion with Stockdale Investment Group's trademark?[26]

A likelihood of confusion means more than a mere possibility of confusion; rather, Stockdale Investment Group must demonstrate a probability of confusion.[27] In assessing the likelihood of confusion, you should consider the following "digits of confusion."[28] You must consider the application of each digit in light of the specific circumstances of the case.[29] In considering the digits of confusion, you must consider the marks in the context that a customer perceives them in the marketplace.[30] No single digit is dispositive.[31] The digits may weigh differently from case to case, depending on the particular facts and circumstances involved.[32]

***Factor 1—Type of Mark.***[33] This digit refers to the strength of the mark.[34] You were previously instructed that Stockdale Investment Group's use of STOCKDALE is "descriptive." Descriptive marks are considered to be weak.[35] In evaluating this digit, you should look to the extent of third-party usage of similar marks.[36] The greater the number of identical or more or less similar marks already in use on different kinds of goods, the less the likelihood of confusion.[37] You may consider evidence of third-party usage of a mark on unrelated goods and services in assessing the mark's strength in the marketplace.[38]

---

[26] ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS § 10.2 (2019).

[27] *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 453 (5th Cir. 2017).

[28] *Springboards To Educ., Inc. v. Houston Indep. Sch. Dist.*, 912 F.3d 805, 812 (5th Cir. 2019).

[29] *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 485 (5th Cir. 2004).

[30] *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 485 (5th Cir. 2004).

[31] *Bd. of Supervisors for Louisiana State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 478 (5th Cir. 2008).

[32] *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009).

[33] *Springboards To Educ., Inc. v. Houston Indep. Sch. Dist.*, 912 F.3d 805, 812 (5th Cir. 2019), as revised (Jan. 29, 2019), as revised (Feb. 14, 2019).

[34] *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009)

[35] *Serv. Merch. Co. v. Serv. Jewelry Stores, Inc.*, 737 F. Supp. 983, 998 (S.D. Tex. 1990); *King-Size, Inc. v. Frank's King Size Clothes, Inc.*, 547 F. Supp. 1138, 1160 (S.D. Tex. 1982) ("[T]he Court concludes on the basis of its prior analysis in this regard that the mark "king size" is descriptive and thus a weak mark."); *Texas Dairy Queen Operators Council v. Feed Store, Inc.*, 1986 WL 15609, at *4 (N.D. Tex. Oct. 8, 1986) ("Recall that descriptive marks are considered weak marks.").

[36] *Quantum Fitness Corp. v. Quantum LifeStyle Centers, L.L.C.*, 83 F. Supp. 2d 810, 820 (S.D. Tex. 1999).

[37] *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 260 (5th Cir. 1980).

[38] *Quantum Fitness Corp. v. Quantum LifeStyle Centers, L.L.C.*, 83 F. Supp. 2d 810, 820 (S.D. Tex. 1999).

*Factor 2—Similarity between the Two Marks.* In evaluating this digit, you are instructed to consider the marks' appearance, sound, and meaning.[39] You should consider the marks in the context that a customer perceives them in the marketplace.[40] Similarity of appearance is determined on the basis of the total effect of the designation or the overall impression created by the mark as a whole, rather than on a comparison of individual features.[41] You should consider the context of use, such as labels, packaging, and advertising.[42] The use of identical dominant words does not automatically equate to similarity between marks.[43] It is necessary to consider the full names of the parties to determine whether Stockdale Capital Partners' name invites or avoids confusion.[44]

*Factors 3—Similarity of Products or Services.* In general, the greater the similarity between the products and services, the greater the likelihood of confusion, and vice versa.[45]

*Factor 4—Identity of Retail Outlets and Purchasers.* Dissimilarities between the retail outlets and the predominant consumers of the parties' goods or services lessen the possibility of confusion, mistake, or deception.[46] You should consider the similarity of the core consumers of each party.[47]

*Factor 5—Identity of Advertising Media Used.* You should consider whether Stockdale Investment Group and Stockdale Capital Partners advertise or promote their businesses in the same or similar media.[48] In general, the greater the similarity in advertising campaigns, the greater the likelihood of confusion, and vice versa.[49]

*Factor 6—Stockdale Capital Partner's Intent.* This digit focuses on whether Stockdale Capital Partners intended to derive benefits from Stockdale Investment Group's reputation.[50] If Stockdale Capital Partners acted in good faith in adopting its name, then this digit of confusion

---

[39] *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 454 (5th Cir. 2017)

[40] *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 485 (5th Cir. 2004)

[41] *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 228 (5th Cir. 2009); *Exxon Corp. v. Texas Motor Exch. of Houston, Inc.*, 628 F.2d 500, 505 (5th Cir. 1980).

[42] *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 228 (5th Cir. 2009)

[43] *Springboards To Educ., Inc. v. Houston Indep. Sch. Dist.*, 912 F.3d 805, 815–16 (5th Cir. 2019), as revised (Jan. 29, 2019), as revised (Feb. 14, 2019).

[44] *Safeway Stores, Inc. v. Safeway Ins. Co.*, 657 F. Supp. 1307, 1314 (M.D. La. 1985), *aff'd* 791 F.2d 929 (5th Cir. 1986) (citing *Sec. Ctr., Ltd. v. First Nat. Sec. Centers*, 750 F.2d 1295, 1302 (5th Cir. 1985))

[45] *All. for Good Gov't v. Coal. for Better Gov't*, 901 F.3d 498, 512 (5th Cir. 2018).

[46] *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 262 (5th Cir. 1980)

[47] *Viacom Int'l v. IJR Capital Investments, L.L.C.*, 891 F.3d 178, 194 (5th Cir. 2018) ("[T]he core consumers of each mark are dissimilar.").

[48] *Cross Trailers, Inc. v. Cross Trailer Mfg. & Sales, LLC*, 363 F. Supp. 3d 774, 791 (W.D. Tex. 2018) (quoting *All. for Good Gov't v. Coal. for Better Gov't*, 901 F.3d 498, 512 (5th Cir. 2018)).

[49] *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 455 (5th Cir. 2017).

[50] *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 455 (5th Cir. 2017)

becomes a nonfactor in the likelihood-of-confusion analysis, rather than weighing in favor of a likelihood of confusion.[51]

     ***Factor 7—Actual Confusion.*** You should consider the frequency of actual confusion compared to the period Stockdale Capital Partners allegedly conducted business under its name.[52] An absence of, or minimal, actual confusion, over an extended period of time of concurrent business weighs against a likelihood of confusion.[53]

     ***Factor 8—Degree of Care Exercised by Potential Purchasers.*** The greater the care potential purchasers exercise, the less likely they will confuse a junior user's products or services with the senior mark user's products or services.[54] Professional and institutional purchasers are virtually certain to be informed, deliberative buyers.[55] You should consider the amount diligence and communication which takes place before any purchasing decisions, as well as the magnitude of the transactions.[56]

     Answer "Yes" or "No:

     Answer:_____

---

[51] *Elvis Presley Enterprises, Inc. v. Capece*, 141 F.3d 188, 203 (5th Cir. 1998);*RE/MAX Intern., Inc. v. Trendsetter Realty, LLC*, 655 F. Supp. 2d 679, 704 (S.D. Tex. 2009).

[52] *T-Mobile US, Inc. v. AIO Wireless LLC*, 991 F. Supp. 2d 888, 923 (S.D. Tex. 2014)

[53] *Elvis Presley Enterprises, Inc. v. Capece*, 141 F.3d 188, 204 (5th Cir. 1998)

[54] *Springboards To Educ., Inc. v. Houston Indep. Sch. Dist.*, 912 F.3d 805, 817 (5th Cir. 2019), as revised (Jan. 29, 2019), as revised (Feb. 14, 2019).

[55] *Oreck Corp. v. U.S. Floor Sys., Inc.*, 803 F.2d 166, 173 (5th Cir. 1986); *Springboards To Educ., Inc. v. Houston Indep. Sch. Dist.*, 912 F.3d 805, 817 (5th Cir. 2019), as revised (Jan. 29, 2019), as revised (Feb. 14, 2019).

[56] *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 458 (5th Cir. 2017).

**AGREED INSTRUCTION NO. 9:**

It is now your duty to deliberate and to consult with one another in an effort to reach a verdict. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. During your deliberations, do not hesitate to re-examine your own opinions and change your mind if you are convinced that you were wrong. But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

Remember at all times, you are the judges of the facts. You have been allowed to take notes during this trial. Any notes that you took during this trial are only aids to memory. If your memory differs from your notes, you should rely on your memory and not on the notes. The notes are not evidence. If you did not take notes, rely on your independent recollection of the evidence and do not be unduly influenced by the notes of other jurors. Notes are not entitled to greater weight than the recollection or impression of each juror about the testimony.

When you go into the jury room to deliberate, you may take with you a copy of this charge, the exhibits that I have admitted into evidence, and your notes. You must select a presiding juror to guide you in your deliberations and to speak for you here in the courtroom.

Your verdict must be unanimous. After you have reached a unanimous verdict, your presiding juror must fill out the answers to the written questions on the verdict form and sign and date it. After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.

If you need to communicate with me during your deliberations, the presiding juror should write the inquiry and give it to the court security officer. After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom. Keep in mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question.

You may now proceed to the jury room to begin your deliberations.

<u>Authority:</u>

(Federal Pattern Jury Charge No. 3.7, **Duty to Deliberate, Notes**)