# EXHIBIT J

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STOCKDALE INVESTMENT GROUP, INC. D/B/A STOCKDALE<br>*Plaintiff*, | § § § § § | |
| v. | § § | CIVIL ACTION NO. 4:18-cv-02949 |
| STOCKDALE CAPITAL PARTNERS, LLC; STOCKDALE CAPITAL PARTNERS RE FUND I GP, LLC; STOCKDALE CAPITAL PARTNERS REAL ESTATE FUND, LP; STOCKDALE CAPITAL RE INVESTMENTS, LLC; STOCKDALE CAPITAL RE, LLC; and STOCKDALE CAPITAL SERVICES, LLC<br>*Defendants*. | § § § § § § § § § § § | |

**PLAINTIFF'S MEMORANDUM OF LAW**

Plaintiff Stockdale Investment Group, Inc. d/b/a Stockdale ("Stockdale") files this Memorandum of Law. In support of the foregoing, Plaintiff respectfully shows the Court as follows:

### I.   APPLICABLE LEGAL STANDARDS

**A.   The Stockdale Mark is Entitled to Protection**

Stockdale is entitled to protection from Defendants' infringement on Stockdale's mark, "Stockdale", used in both text and in the following logo form[1]:



---

[1]   Stockdale's mark including its logo will be collectively referred to as the "Stockdale Mark."

from Defendants' infringing mark including the following logo[2]:



The Lanham Act makes liable "[a]ny person who . . . uses in commerce any word, term, name, symbol, or device, . . . which . . . is likely to cause confusion, or to cause mistake . . . as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. §1125.

Analysis for trademark infringement under the Lanham Act is a two-step process. *Bd. of Regents of the Univ. of Hous. Sys. v. Hous. Coll. of Law, Inc.*, 214 F. Supp. 3d 573, 582 (S.D. Tex. 2016). "[A] party must first show that it has a protectable right in the mark and, second, show that there is a likelihood of confusion between the marks." *Id*.

To determine whether a word or phrase is protectable, it must first be determined into which category, (1) generic, (2) descriptive, (3) suggestive, or (4) arbitrary or fanciful, the word or phrase belongs. *Bd. of Regents of the Univ. of Hous. Sys.,* 214 F. Supp. 3d 573 at 583-84. A mark must be distinctive to be protectable. *Id*. Certain marks, including words "that are 'arbitrary' ('Camel' cigarettes), 'fanciful' ('Kodak' film), or 'suggestive' ('Tide' laundry detergent) are held to be inherently distinctive." *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 210-11 (2000). Marks that are not inherently distinctive must acquire "secondary meaning" to be protectable. *Id.* at 211. *Helpful Hound, L.L.C. v. New Orleans Bldg. Corp.*, 331 F. Supp. 3d 581, 592 (E.D. La. 2018).

---

[2]   All of the respective marks for Defendants in this matter will be collectively referred to as "Defendants' Mark."

    **1.**    *The Stockdale Mark is Arbitrary*

Arbitrary marks are composed of words "which are in common linguistic use but which, when used with the goods or services, neither suggest nor describe any ingredient, quality, or characteristic of those goods or services." *Healix Infusion Therapy, Inc v. Healix, Inc.*, No. H-17-357, 2018 U.S. Dist. LEXIS 63794, at *21 (S.D. Tex. 2018).

A mark involving a geographic location can still be arbitrary if it does not identify the place or the region the goods come from, or it does not suggest that the goods come from the place or region named by the mark. *Helpful Hound, L.L.C.*, 331 F. Supp. 3d at 593. However, a mark is geographically descriptive if "a logical connection can be made between the product and the geographical term." *Id*.

The Stockdale mark enjoys a high level of protection as an arbitrary mark. Although Stockdale was originally named for its initial base of operations in Stockdale, California (for no other reason than that is where the family business was started), Stockdale began moving its base of operations to Texas in 2011 and formally merged its California company with the Texas "Stockdale" in early 2012. Aside from the meaning Stockdale has developed for the name and mark of "Stockdale" over the years, neither the "Stockdale" name nor the Stockdale Mark bears any relationship to the real estate services offered by Stockdale. Further, "Stockdale" does not indicate the specific location of Stockdale's operations or business reach, and the public does not associate the original, largely unknown locale with Stockdale's brand or services.

Moreover, over the last 29 years, "Stockdale" has acquired a secondary meaning through Stockdale's continuous and uninterrupted use of its mark. Over the years, Stockdale has spent thousands of dollars on advertising its services using the Stockdale Mark, and the Stockdale Mark has remained the same or substantially similar throughout the time Stockdale has been in business. In addition to the Stockdale Mark regularly appearing in Stockdale's promotional

3

materials and being ever-present on Stockdale's website for over a decade, the Stockdale Mark is regularly used to identify Stockdale's services in newspapers and real estate magazines—sometimes unsolicited. The Stockdale Mark is further used to identify Stockdale's services in industry groups such as Urban Land Institute and the International Council of Shopping Centers.[3]

Stockdale's customers and partners have come to associate the Stockdale Mark with Stockdale's services, and over the last 5 years alone, Stockdale has marketed in excess of $125,000,000.00 in real estate using the Stockdale Mark. Stockdale's services touch and concern properties in the commercial, residential, retail, and industrial arenas.

Stockdale is an arbitrary mark as it does not suggest nor describe the characteristics of Stockdale's services. *Id*. There is no evidence that anyone associates the word Stockdale with a particular person, place, good or service. *See Brown v. Bridges*, No. 3:12-cv-4947-P, 2016 U.S. Dist. LEXIS 188561, at *22 (N.D. Tex. 2016) (finding a mark is arbitrary where a person could not hear or see the mark and accurately conclude what types of goods or services the company sold, "even if she were to exercise her imagination."). Instead, any consumer association would come solely from Stockdale's efforts and promotion in the real estate arena. *See Oriental Fin. Grp., Inc. v. Cooperativa De Ahorro Y Crédito Oriental*, 832 F.3d 15, 20 (1st Cir. 2016).

In *Oriental Fin. Grp., Inc.*, the court found that "Oriental" was a protectable mark as Oriental does not convey to the consumer that Oriental Group's financial services are somehow "eastern" in their character despite Oriental's obvious geographic connection. *Id*. The court held that "[a]s an arbitrary mark, ORIENTAL does not convey to the consumer that Oriental Group's financial services are somehow "eastern" in their character . . . [as] . . . when used with the . . . services in issue, neither suggest[s] nor describe[s] any ingredient, quality or characteristic of those . . . services." *Id*. ("Although it originally signaled Oriental Group's geographic origins, it

---

[3] *See* Exhibits 7 and 8.

is now used as an arbitrary mark to distinguish its financial services from others in the marketplace.").

Here, as in *Oriental Fin. Grp., Inc.*, the use of "Stockdale" with the real estate services provided by Stockdale does not convey to the consumer that the services are from a "Stockdale" location. Indeed, both parties have testified they have no knowledge of any other "Stockdale" providing real estate services.[4] Thus, the Stockdale Mark is properly classified as arbitrary and is protectable under the Lanham Act.

   2.   *Alternatively, the Stockdale Mark is Geographically Descriptive and has Acquired Secondary Meaning*

Alternatively, Stockdale's Mark is at minimum a geographically descriptive mark that has acquired secondary meaning. *See Bd. of Regents of the Univ. of Hous. Sys.*, 214 F. Supp. 3d at 584 (finding "University of Houston Law Center" had acquired secondary meaning). A geographically descriptive mark has secondary meaning when the mark no longer causes the public to associate the goods or services with a particular place, but instead, with a particular source. *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 537 (5th Cir. 1998).

Factors to be considered in determining whether a term has acquired secondary meaning include: (1) length and manner of use of the mark or trade dress, (2) volume of sales, (3) amount and manner of advertising, (4) nature of use of the mark or trade dress in newspapers and magazines, (5) consumer-survey evidence, (6) direct consumer testimony, and (7) the defendant's intent in copying the mark. *Id.* at 541. Courts also rely on evidence of actual confusion in finding secondary meaning. *Lady Primrose's, Inc. v. After Hours Bath Prods.*, No. 99-40753, 2000 U.S. App. LEXIS 40947, at *7 (5th Cir. 2000). In determining whether a word or mark has acquired secondary meaning, the crucial issue is not the effort which was made

---

[4]   Exhibit 2; Exhibit 11 at 84:7-11.

5

to create it but the effectiveness of that effort. *King-Size, Inc. v. Frank's King Size Clothes, Inc.*, 547 F. Supp. 1138, 1156 (S.D. Tex. 1982).

Stockdale has continuously used its mark since 1989. Stockdale's mark does not identify the place or region from which any goods come from. *See Luxottica Grp. S.P.A. v. Atl. Sunglasses LLC*, No. 4:15-CV-1795, 2017 U.S. Dist. LEXIS 217991, at *9 (S.D. Tex. 2017) ("Defendants' statement that there are cities in the United States named Oakley does not demonstrate that any of those cities were the source of the trademark."). In fact, Stockdale's home office is in Dallas, Texas. Further, the Stockdale Mark does not suggest that Stockdale's services come from any location. Stockdale has testified that its name is recognized throughout the country and that it currently has property in California, Texas, and North Carolina.

Stockdale regularly enters into major transactions. Stockdale's current estimated marked share is between 150 and 200 million dollars. Since 2013 alone, Stockdale has acquired an estimated 75 million dollars in real estate. Thus, the length and manner of Stockdale's use of its mark along with its volume of sales shows that the Stockdale Mark has acquired secondary meaning.

Stockdale can also show extensive advertising and promotion of its mark. Stockdale has expended considerable efforts advertising and promoting the use of its mark. This includes, but is not limited to, expenses related to acquiring the internet domain name, www.stockdale.com, memberships in professional associations such as the Urban Land Institute and the International Council for Shopping Center, sponsorships under the Stockdale Mark, and accolades for Stockdale's workplace environment. Stockdale has also published advertisements in magazines and marketed in nationwide publications and considers properties across the United States, underwriting "every deal that comes across [their] desk" from "across the United States," which involves commercial interfacing with real estate professionals coast-to-coast. These steps

6

promote a conscious connection between "Stockdale" and the multi-state real estate services it provides. Finally, Stockdale has detailed multiple instances of actual confusion with its mark and Defendants' Mark. Therefore, Stockdale's mark has acquired secondary meaning as Stockdale's services are not connected with a specific location, but with the real estate industry they operate in.

### 3. *If the Court Finds "Stockdale" to be Primarily Merely a Surname, it has Acquired Secondary Meaning*

As with geographically descriptive marks, a mark that includes a surname is likewise protectable if it has acquired secondary meaning. *See Osgood Heating & Air Conditioning, Inc. v. Osgood*, No. A-04-CA-1037-SS, 2004 U.S. Dist. LEXIS 28817, at *6 (W.D. Tex. 2004); *see also Bd. of Regents of the Univ. of Hous. Sys.*, 214 F. Supp. 3d 573 at 584 (S.D. Tex. 2016) (finding "University of Houston Law Center" had acquired secondary meaning with "Houston" being both a geographic term and a surname). Courts consider the same factors in determining whether a surname has acquired secondary meaning as they do for geographically descriptive marks. *See Amy's Ice Creams, Inc. v. Amy's Kitchen, Inc.*, 60 F. Supp. 3d 738, 748 (W.D. Tex. 2014). Thus, as shown above, if the Court considers "Stockdale" to be primarily a surname, it has acquired secondary meaning and is protectable.

### B. Stockdale is the Senior User of the Stockdale Mark

The first party to use a mark is generally held to be the 'senior' user and is entitled to enjoin other junior users from using the mark, or one that is deceptively similar to it. *Helpful Hound, L.L.C.*, 331 F. Supp. 3d at 595-96. The senior user's use must be continuous up until the present. *See* 2 McCarthy on Trademarks and Unfair Competition § 16:9 (5th ed. 2018). However, some evolution in use is tolerated. *Id*. at § 17:24.

Here, Stockdale has continuously used its mark since 1989. Stockdale has continuously been involved in the real estate field from that time. Defendants unequivocally did not begin

7

using Defendants' Mark until 2013. Thus, Stockdale is the senior user of the mark and entitled to enjoin Defendants from using same.

### C. Defendants' Mark Causes Confusion

Stockdale can demonstrate a likelihood of success on the merits of its trademark infringement claim as Stockdale can show that Defendants' Mark is not only likely to cause confusion with Stockdale's protectable mark, but can show the Court actual examples of confusion. *See Paulsson Geophysical Servs. v. Sigmar*, 529 F.3d 303 (5th Cir. 2008). In determining whether a likelihood of confusion exists, the Court considers a non-exhaustive list of "digits of confusion," including:

(1) the strength of the plaintiff's mark;

(2) the similarity of design between the marks;

(3) the similarity of the services;

(4) the identity of retail outlets and purchasers;

(5) the similarity of advertising media used;

(6) the defendant's intent;

(7) the evidence of actual confusion; and

(8) the degree of care exercised by potential purchasers.

*See Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008).

The digits or factors may weigh differently from case to case, depending on the particular facts and circumstances involved and no one factor is dispositive. *Elvis Presley Enterprises, Inc. v. Capece*, 141 F.3d 188, 194 (5th Cir. 1998). Indeed, the *Elvis* court expressly held that proof of intent to confuse the public is *not* necessary to a finding of a likelihood of confusion. *Bd. of Regents of the Univ. of Hous. Sys.*, 214 F. Supp. 3d at 584. Importantly, a finding of a likelihood of confusion does not even require a positive finding on a majority of the digits of confusion.

8

*Elvis Presley Enterprises, Inc.*, 141 F.3d at 194. In addition to the listed factors, a court is free to consider other relevant factors in determining whether a likelihood of confusion exists." *Bd. of Regents of the Univ. of Hous. Sys.*, 214 F. Supp. 3d at 584. As detailed below, especially in light of the evidence of actual confusion, the digits of confusion weigh heavily in favor of a finding that Stockdale is likely to succeed on the merits of its claims.

1. ***Strength of Stockdale's Mark***

Stockdale can show that its mark is strong in the real estate market. Courts first examine the mark's conceptual strength by evaluating whether the mark should be classified as "generic, descriptive, suggestive, or arbitrary and fanciful." *Bd. of Regents of the Univ. of Hous. Sys.*, 214 F. Supp. 3d at 585.

The strength of a mark and the protection that it is afforded increases the more arbitrary a mark is. *Id*. Apart from their classification, marks may be further strengthened in the marketplace by "extensive advertising, length of time in business, public recognition, and uniqueness." *Id*.

While evidence of third party use may weaken a mark, there would have to be a plethora of such similar marks such that customers have become educated to distinguish between different marks on the basis of minute distinctions." *Id*. "To the extent consumers are unaware of third-party use, the logic behind the third-party use rule is inapplicable; the consumers have not been conditioned to distinguish among the marks." *Id*.

Here, as discussed above, the Stockdale Mark deserves protection as an arbitrary mark making it a strong mark for the purposes of this digit. Further, Stockdale has continuously used its mark in the real estate field since 1989 and has testified that brokers across the country know its mark. *See Healix Infusion Therapy, Inc.*, No. H-17-357, 2018 U.S. Dist. LEXIS 63794, at *28 (finding that customer base alone does not define the relevant market). Third party use of

9

the word "Stockdale" does not weaken the Stockdale Mark as both parties have testified that they know of no other entity in the real estate field using the word "Stockdale." Thus, the Stockdale Mark is strong and this digit of confusion weighs in favor of Stockdale.

### 2. *The Parties' Marks are Substantially Similar*

The second digit of confusion weighs heavily in favor of Stockdale. The Fifth Circuit uses a "subjective eyeball test" to determine whether two marks are similar. *T-Mobile US, Inc. v. AIO Wireless LLC*, 991 F. Supp. 2d 888, 921 (S.D. Tex. 2014). The similarity of design is determined by considering the overall impression created by the mark as a whole rather than simply comparing individual features of the marks. *Exxon Corp. v. Tex. Motor Exch.*, 628 F.2d 500, 505 (5th Cir. 1980). In making this determination, courts consider "the marks' appearance, sound, and meaning." *Elvis Presley Enterprises, Inc.*, 141 F.3d at 201. As this Court has previously noted, "the most successful form of copying is to employ enough points of similarity to confuse the public, with enough points of difference to confuse the courts. *Bd. of Regents of the Univ. of Hous. Sys.*, 214 F. Supp. 3d at 588 (quoting *Dallas Cowboys Football Club, Ltd. v. Am.'s Team Properties, Inc.*, 616 F. Supp. 2d 622, 638 (N.D. Tex. 2009)). While prospective purchasers may recognize that the two designations are distinct in their appearance, confusion may still be found if purchasers are likely to assume that the similarities indicate a connection between the two users." *Bd. of Regents of the Univ. of Hous. Sys.*, 214 F. Supp. 3d at 588 (S.D. Tex. 2016).

In assessing mark similarity, the Fifth circuit has made clear it "gives more attention to the dominant features of a mark." *Streamline Prod. Sys. v. Streamline Mfg.*, 851 F.3d 440, 454 (5th Cir. 2017). In *Streamline Prod. Sys.,* the Court compared two marks both starting with the term Streamline and found the marks were "identical" holding that "giving more attention to the dominant features of the mark requires our analysis to focus on the use of "Streamline" in both

marks because the additional words in each mark are more generic . . .[i]n this sense, the two marks are identical." *Id*.

Here, as detailed above in the factual background, the two marks are similar in name, design and color choice. As in *Streamline Prod. Sys.*, the dominant portion of the parties' marks are identical. Further, Defendants' business model ensures that purchasers are likely to assume a connection between Stockdale and Defendants. Specifically, Defendants' use of the Stockdale name by itself without the "Capital" in its presentations to investors and as its choice for several of its entities (i.e. "Stockdale Management," "Stockdale Acquisition," Stockdale/SG") ensures that customers and others in the real estate field will confuse them as being related. As shown below, certain sophisticated individuals in the field already have. Because of the substantial similarity of the parties' marks, this digit weighs in favor of Stockdale.

### 3. *Defendants' Products and Services are Substantially Similar*

The greater the similarity between the parties' services, the greater the likelihood of confusion. *Elvis Presley Enterprises, Inc.*, 141 F.3d at 202. The plaintiff does not have to show identical services and business model especially where the plaintiff has pled an affiliation-confusion theory as Stockdale has here. *Bd. of Regents of the Univ. of Hous. Sys.*, 214 F. Supp. 3d at 589. In fact, under an affiliation-confusion theory, differences in specifics of the business can add to the confusion. *Id*.

Here, as shown above, Defendants and Stockdale are direct competitors in identical industries and geographic regions. They operate highly similar businesses in multiple aspects of the real estate field in the commercial, residential, industrial, and retail arenas. Both parties have completed deals of similar sizes in the very same states. While the specific locations may very within those states, neither party plans to limit their business to only those certain areas of those states. Further, any specific aspects of their business that Defendants may point to as different

from Stockdale's only compounds the confusion as it allows an interested party to believe that Defendants are simply another branch of Stockdale created for that separate purpose. *Id*. Thus, this digit of confusion weighs in favor of Stockdale.

    4.    *The Relevant Purchasers are Substantially Similar*

While differences in the parties' customer bases can lessen the likelihood of confusion, where the relevant consumers are substantially similar, confusion is more likely. *Id*. 589-590.

Here, both parties seek to buy land to either lease, manage, develop, or sell. Thus both parties engage with property owners and brokers to accomplish these objectives. Defendants cannot show that the property owners and brokers they engage with will necessarily be different than the ones Stockdale does. In fact, the opposite is true. For example, Defendants have admitted they work with CBRE, one of the top three large national brokerage houses in the country. Stockdale works with CBRE as well. As the intended audience of both parties is exactly the same in the exact same industry. This digit weighs in Stockdale's favor.

    5.    *Evidence of Actual Confusion*

While very little proof of actual confusion is necessary to prove the likelihood of confusion, an almost overwhelming amount of proof is necessary to refute such proof. *Bd. of Regents of the Univ. of Hous. Sys.*, 214 F. Supp. 3d at 590. In fact, the Fifth Circuit has affirmed a district court's bench-trial finding of actual confusion based on a single known instance of confusion. *Louisiana World Expo., Inc. v. Logue*, 746 F.2d 1033, 1041 (5th Cir. 1984).

Although point-of-sale confusion is the most common and widely recognized type of confusion that creates infringement, it does not "mark the outer boundaries of trademark infringement." *Bd. of Regents of the Univ. of Hous. Sys.*, 214 F. Supp. 3d at 590. Trademark infringement can also "be based upon confusion that creates initial consumer interest, even though no actual sale is finally completed as a result of the confusion." *Id*. This type of

confusion, known as "initial-interest confusion," gives "the junior user credibility during the early stages of a transaction and can possibly bar the senior user from consideration by the consumer once the confusion is dissipated." *Id*. To show actual confusion, a plaintiff may rely on anecdotal instances of consumer confusion. *Id*. at 593. This constitutes far more than the "very little proof of actual confusion" that the Fifth Circuit has required to tip this digit of confusion in plaintiffs' favor. *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 229 (5th Cir. 2009); *see also Louisiana World Expo., Inc. v.*, 746 F.2d at 1041 (5th Cir. 1984) (holding that single known incidence of confusion by purchaser supported bench trial finding of likelihood of confusion).

Here, Stockdale has detailed actual confusion. Lincoln Property Company, CBRE Group, Inc., Holliday Fenoglio Fowler, L.P., and Arch Capital have all reported instances of confusion between the two companies. These entities are major, sophisticated players in the United States real estate market. The fact that they each have confused Stockdale and Defendants is conclusive that this digit weighs in favor of Stockdale. Further, news media outlets have confused the two companies as since early June of this year, several news media outlets including 10 News, an ABC affiliate, incorrectly associated the real Stockdale with the Horton Plaza project. And outside the media, the real Stockdale began receiving communications commenting on Stockdale's involvement in the Horton Plaza Mall project. In fact, a simple Google search of "Stockdale" and "real estate" also evidences the confusion. While the subject line of the results suggests news will be reported about the real Stockdale, these article are, in fact, reporting on Defendants.

This evidence of actual confusion gives rise to the initial-interest confusion detailed previously by this Court. *Bd. of Regents of the Univ. of Hous. Sys.*, 214 F. Supp. 3d at 590. In real estate, as major transactions are at stake, a party's reputation and credibility are often the

basis for offers or opportunities even being extended. Thus, opportunities may possibly be lost before Stockdale is even aware of them based on the false assumption that Stockdale is affiliated with Defendants.

Because Stockdale has a protectable mark and the factors of confusion weigh in favor of Stockdale, Stockdale has affirmatively shown it is entitled to permanently enjoin Defendants from using the term Stockdale in connection with its services.

Respectfully submitted,

**WINSTEAD PC**

By: */s/ Tom Van Arsdel*
　　　Tom Van Arsdel
　　　State Bar No. 24008196
　　　Federal ID 23492
　　　tvanarsdel@winstead.com
　　　Katie Banks
　　　State Bar No. 24092114
　　　Federal ID 2516169
　　　kbanks@winstead.com
　　　600 Travis, Suite 5200
　　　Houston, Texas 77002
　　　Telephone: (713) 650-8400
　　　Facsimile: (713) 650-2400

**ATTORNEYS FOR PLAINTIFF STOCKDALE INVESTMENT GROUP, INC. D/B/A STOCKDALE**

## **CERTIFICATE OF SERVICE**

 I hereby certify that in compliance with Rule 5 of the Federal Rules of Civil Procedure, a copy of the foregoing was served electronically on counsel of record on November 5, 2019:

| | |
|---|---|
| **Collin A. Rose** | *Via Electronic Service* |
| collin.rose@chamberlainlaw.com | |
| **Justin E. VandenBout** | |
| justin.vandenbout@chamberlainlaw.com | |
| **Kevin C. Navetta** | |
| kevin.navetta@chamberlainlaw.com | |
| 1200 Smith Street, Suite 1400 | |
| Houston, Texas 77002 | |
| 713.658.1818—Telephone | |
| 713.658.2553—Fax | |

               */s/ Tom Van Arsdel*
               Tom Van Arsdel