# EXHIBIT K

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **STOCKDALE INVESTMENT GROUP, INC. D/B/A STOCKDALE** <br> *Plaintiff,* <br><br> v. <br><br> **STOCKDALE CAPITAL PARTNERS, LLC, STOCKDALE CAPITAL PARTNERS RE FUND I GP, LLC, STOCKDALE CAPITAL PARTNERS REAL ESTATE FUND, LP, STOCKDALE CAPITAL RE INVESTMENTS, LLC, STOCKDALE CAPITAL RE, LLC, and STOCKDALE CAPITAL SERVICES, LLC** <br> **Defendants.** | § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 4:18-cv-02949 |

### DEFENDANTS' MEMORANDUM OF LAW

Defendants Stockdale Capital Partners, LLC, Stockdale Capital Partners Fund I GP, LLC, Stockdale Capital Partners Real Estate Fund, LP, Stockdale Capital Investments, LLC, Stockdale Capital RE, LLC, Stockdale Capital Services, LLC, Stockdale Management, LLC, Stockdale/SG, LLC, and Stockdale Acquisitions, LLC submit the following Memorandum of Law:

1

**MEMORANDUM OF LAW REGARDING THE CLAIMS**

A.  **Elements of Plaintiff's Claims**

1.  Plaintiff asserts three claims against Defendants: (1) federal trademark infringement; (2) federal unfair competition; and (3) Texas common law unfair competition. Each of these claims requires proof of the same elements.[1] To prove its claims, Plaintiff must prove the following elements by a preponderance of the evidence: (1) STOCKDALE is a legally protectable mark which Plaintiff owns; and (2) Defendants' use of the STOCKDALE mark creates a likelihood of confusion as to source, affiliation, or sponsorship.[2]

B.  **Classification of Marks**

2.  Plaintiff's alleged mark is merely a surname and thus requires proof of secondary meaning. The Lanham Act does not permit registration of a trademark that is primarily merely a surname unless secondary meaning is established. 15 U.S.C. § 1052(e)(4). "A surname is classified as a descriptive word mark." *Vais Arms, Inc. v. Vais*, 383 F.3d 287, 292 n.6 (5th Cir. 2004); *Amy's Ice Creams, Inc. v. Amy's Kitchen, Inc.*, 60 F. Supp. 3d 738, 747 (W.D. Tex. 2014) ("Personal names-both surnames and first names-are generally regarded as descriptive terms that require proof of secondary meaning."); *Registral.com, LLC v. Fisher Controls Intern., Inc.*, 2001 WL 34109376, at *6 (S.D. Tex. June 28, 2001) ("Surnames are distinctive only if they have acquired secondary meaning." (citing *Conan Properties, Inc. v. Conans Pizza, Inc.*, 752 F.2d

---

[1] *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 236 (5th Cir. 2010) ("A trademark infringement claim and unfair competition action under Texas common law presents essentially no difference in issues than those under federal trademark infringement actions."(internal quotations omitted)); *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 780, 112 S. Ct. 2753, 2763, 120 L. Ed. 2d 615 (1992) ("Whether we call the violation infringement, unfair competition or false designation of origin, the test is identical—is there a 'likelihood of confusion.'" (internal quotations omitted)); *Marathon Mfg. Co. v. Enerlite Products Corp.*, 767 F.2d 214, 217 (5th Cir. 1985) ("As a general rule, the same facts which would support an action for trademark infringement would also support an action for unfair competition."); *Phoenix Entm't Partners LLC v. Boyte*, 247 F. Supp. 3d 791, 796 (S.D. Tex. 2017) (noting same elements for federal trademark infringement and unfair competition claims).

[2] *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 450 (5th Cir. 2017); *All. for Good Gov't v. Coal. for Better Gov't*, 901 F.3d 498, 505 (5th Cir. 2018).

2

145, 155 (5th Cir.1985)); *see Stockdale Inv. Group Inc. v. Stockdale Capital Partners, LLC*, 2019 WL 5191526, at *3 (S.D. Tex. Oct. 15, 2019) ("[T]erms that are 'primarily merely surnames' . . . are deemed to be descriptive and thus unprotectable absent a showing of secondary meaning."); *see also 815 Tonawanda St. Corp. v. Fay's Drug Co., Inc.*, 842 F.2d 643, 649 (2d Cir. 1988) (requiring secondary meaning even where no person associated with business with the surname sought to be protected as a trademark). "A mark is primarily merely a surname if the surname 'is the primary significance of the mark as a whole to the purchasing public.'" *Earnhardt v. Kerry Earnhardt, Inc.*, 864 F.3d 1374, 1377 (Fed. Cir. 2017) (quoting *In re Hutchinson Tech. Inc.*, 852 F.2d 552, 554 (Fed. Cir. 1988)). The lack of dictionary definitions of a word is indicia that the primary significance of a mark is as a surname. *See In re Hutchinson Tech. Inc.*, 852 F.2d at 556.

3. Plaintiff admits that its mark is descriptive by relying on Section 2(f) in seeking its trademark registration. The Trademark Manual of Examining Procedure (the "TMEP") explains the effect of reliance on Section 2(f) in seeking registration of a trademark:

> For procedural purposes, a claim of distinctiveness under §2(f), whether made in the application as filed or in a subsequent amendment, may be construed as conceding that the matter to which it pertains is not inherently distinctive and, thus, not registerable on the Principal Register absent proof of acquired distinctiveness. . . . Once an applicant has claimed that matter has acquired distinctiveness under §2(f), the issue to be determined is not whether the matter is inherently distinctive but, rather, whether it has acquired distinctiveness.

4. *See* TRADEMARK MANUAL OF EXAMINING PROCEDURE § 1212.02(b). Federal courts apply the same standard in determining the classification of a mark where the plaintiff relies on Section 2(f) in seeking registration. Specifically, "an applicant's reliance on Section 2(f) during prosecution presumes that the mark is descriptive." *Cold War Museum, Inc. v. Cold War Air Museum, Inc.*, 586 F.3d 1352, 1358 (Fed. Cir. 2009). In fact, "the *statute* accepts a lack of inherent distinctiveness as an established fact." *Yamaha Intern. Corp. v. Hoshino Gakki Co.,*

3

*Ltd.*, 840 F.2d 1572, 1577 (Fed. Cir. 1988) (emphasis in original). This is true "in cases where registration was initially sought on the basis of distinctiveness, [and] subsequent reliance by the applicant on Section 2(f) assumes that the mark has been shown or conceded to be merely descriptive." *Id.*; *see also Marketquest Group, Inc. v. BIC Corp.*, 316 F. Supp. 3d 1234, 1266 (S.D. Cal. 2018). The Trademark Trial and Appeal Board routinely relies on a Section 2(f) filing as an admission that the mark is descriptive.[3]

5. TMEP § 1212.02(c) permits a party to seek registration of a trademark under Section 2(f) in the alternative, but requires that the party make a clear reservation of rights to argue that its mark is inherently descriptive. *See In Re 3m Co.*, 77701886, 2012 WL 2588562, at *2 (Trademark Tr. & App. Bd. June 21, 2012) ("The Board has long held that when an applicant . . . amends its application to seek registration based on acquired distinctiveness without expressly reserving its right to argue in the alternative that its mark is inherently distinctive, registration under Section 2(f) is an admission that the mark is not inherently distinctive."); *Kasco Corp. V S. Saw Serv., Inc.*, 27 U.S.P.Q.2d 1501 (Trademark Tr. & App. Bd. 1993) ("reserve its right"); *In Re E S Robbins Corp.*, 30 U.S.P.Q.2d 1540 (Trademark Tr. & App. Bd. 1992) (applicant made Section 2(f) claim "without prejudice" to inherently distinctive argument); *In Re Primos, Inc*, 2002 WL 233307, at *2 (Trademark Tr. & App. Bd. Feb. 14, 2002) (noting "applicant made no such *conditional amendment*" and differentiating from where an applicant adds a Section 2(f) claim in the *alternative* in addition to arguing against the merits (emphasis added)).

---

[3] *See, e.g.*, *Apollo Med. Extrusion Techs., Inc. v. Med. Extrusion Techs., Inc.*, 123 U.S.P.Q.2d 1844 (Trademark Tr. & App. Bd. 2017) ("[B]y seeking registration of its proposed mark . . . pursuant to Section 2(f), Applicant has conceded that this wording is, at the least, merely descriptive of its goods under Section 2(e)(1). . . . Accordingly, Applicant's contention that its applied-for mark is not merely descriptive . . . is untenable."); *In Re Cabot Corp.*, 15 U.S.P.Q.2d 1224 (Trademark Tr. & App. Bd. 1990) ("[A]pplicant argues . . . that this shape is inherently distinctive . . . . However, applicant's initial filing of this application under the provisions of Section 2(f) is tantamount to an admission that this package lacks inherent distinctiveness.").

6. The Court previously entered an Order finding that "Plaintiff's mark is descriptive as a surname." (Doc. 58, at 6). The Court recognized that "[b]ecause Plaintiff's mark is merely descriptive, it is protectable only if it has acquired secondary meaning." (Doc. 58, at 6). Given the Court's ruling, this issue is no longer in dispute. *See Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009); FED. R. CIV. P. 56(g) (a court may enter an order stating any material fact that is not genuinely in dispute and treating the fact as established in the case).

**C. Secondary Meaning**

7. The Fifth Circuit looks to the following factors for determining whether a plaintiff has established secondary meaning: "(1) length and manner of use of the mark or trade dress, (2) volume of sales, (3) amount and manner of advertising, (4) nature of use of the mark or trade dress in newspapers and magazines, (5) consumer-survey evidence, (6) direct consumer testimony, and (7) the defendant's intent in copying the trade dress." *T-Mobile US, Inc. v. AIO Wireless LLC*, 991 F. Supp. 2d 888, 905 (S.D. Tex. 2014). "Secondary meaning is used generally to indicate that a mark or dress has come through use to be uniquely associated with a specific source." *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 247 (5th Cir. 2010). The focus is on the "minds of the public." *Id*. The plaintiff must show that a "substantial number" or "significant quantity" of the consuming public associate the mark with the company. *Vais Arms, Inc. v. Vais*, 383 F.3d 287, 292 n.6 (5th Cir. 2004) (quoting *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir.1990)); *Test Masters Educ. Services, Inc. v. Singh*, 428 F.3d 559, 568 (5th Cir. 2005). "Plaintiff must demonstrate a high degree of proof to establish secondary meaning." *Sugar Busters LLC v. Brennan*, 177 F.3d 258, 269 (5th Cir. 1999).

8. "The determination of whether a mark has acquired secondary meaning is primarily an empirical inquiry." *Provident Precious Metals, LLC v. Nw. Territorial Mint, LLC*, 117 F. Supp. 3d 879, 893 (N.D. Tex. 2015) (citing *Sunbeam Products, Inc. v. W. Bend Co.*, 123

5

F.3d 246, 253 (5th Cir.1997)). "In considering this evidence, the focus is on how it demonstrates that the meaning of the mark or trade dress has been altered in the minds of consumers." *Amazing Spaces*, 608 F.3d at 248 (quoting *Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 541 (5th Cir. 1998)). The Fifth Circuit has "consistently expressed a preference for 'an objective survey of the public's perception of' the mark at issue." *Id*. (quoting *Vision Ctr. v. Opticks, Inc.*, 596 F.2d 111, 119 (5th Cir.1979)). This is because "[t]he chief inquiry is the attitude of the consumer toward the mark; does it denote to him a, single thing coming from a single source? Short of a survey, this is difficult of direct proof." *Aloe Creme Labs., Inc. v. Milsan, Inc.*, 423 F.2d 845, 849 (5th Cir. 1970) (quotations omitted). The lack of survey evidence can create "a significant hindrance to meeting the standard of proof required," a hindrance that may be "insurmountable, especially when considered with the paucity of other evidence purporting to show secondary meaning." *Sec. Ctr., Ltd. v. First Nat. Sec. Centers*, 750 F.2d 1295, 1301 (5th Cir. 1985) (citing *Vision Center v. Opticks, Inc.*, 596 F.2d 111, 115 (5th Cir.1979)).

9.  Alleged instances of confusion do not bear on the secondary meaning of a mark. *Amazing Spaces*, 608 F.3d at 247 ("We also agree with the district court's assessment that the two declarations evidencing consumer confusion do not bear on the secondary meaning of the star symbol."). Although survey evidence is not strictly required, courts express a preference for an objective survey of the public's perception of the mark at issue, and the lack of survey can create a significant hindrance to meeting the standard of proof required. *Id*. at 248; *Viacom Int'l, Inc. v. IJR Capital Invs., L.L.C.*, 891 F.3d 178, 191 (5th Cir. 2018); *Sec. Ctr., Ltd.*, 750 F.2d at 1301.

10. "[A] period of continuous use of the mark alone does not establish secondary meaning. *Half Price Books, Records, Magazines, Inc. v. Barnesandnoble.com, LLC*, 2003 WL

6

23175436, at *4 (N.D. Tex. Aug. 15, 2003); *Bank of Texas v. Commerce Southwest, Inc.*, 741 F.2d 785, 788 (5th Cir.1984)). "Although one party may have been successful in imbuing a name with secondary meaning in three short years, *that does not mean that length of time alone is sufficient to establish secondary meaning.* Other evidence must be considered to determine if a secondary meaning was acquired during a particular time span." *Bank of Texas*, 741 F.3d at 788.

11.   "As for promotion and advertising, spending substantial amounts of money does not of itself cause a mark or trade dress to acquire secondary meaning. . . . The relevant question is not the *extent* of the promotional effort, but their *effectiveness* in altering the meaning of the mark to the consuming public. *Nola Spice Designs, L.L.C. v. Haydel Enterprises, Inc.*, 783 F.3d 527, 545 (5th Cir. 2015) (emphasis in original) (quotations omitted); *see, e.g.*, *Amazing Spaces*, 608 F.3d at 248 (noting inquiry focuses on *effectiveness* of promotional efforts rather than *extent* and finding $725,000 spent on advertising and promotional efforts, among other evidence, insufficient to show secondary meaning); *Sec. Ctr., Ltd.*, 750 F.2d at 1301 ("From the documentation in the record, we cannot infer that the advertising by Security Center even approached the level of effectiveness that would give rise to secondary meaning."); *Honestech, Inc. v. Sonic Sols.*, 725 F. Supp. 2d 573, 579–80 (W.D. Tex. 2010) ("[A]lthough Mr. Choi testified summarily to the amount his company spent on advertising, [the plaintiff] did not introduce any evidence indicating the advertising had any effect."); *Boulle, Ltd. v. De Boulle Diamond & Jewelry, Inc.*, 2014 WL 4413603, at *10 (N.D. Tex. July 31, 2014), *report and recommendation adopted*, 2014 WL 4261994 (N.D. Tex. Aug. 29, 2014) ("Nor is there any evidence of the extent of the audience reached by Jean Boulle's limited advertising and promotional efforts or that such efforts were successful in establishing an association between the mark and Jean Boulle."); *Half Price Books*, 2003 WL 23175436, at *4 ("Half Price provides

7

no evidence demonstrating how its promotional endeavors have altered public perception to the degree that the mark 'Half Price Books' is associated with Half Price.").

12. Volume of sales or business without more is insufficient to establish secondary meaning because "[w]ithout evidence of how the sales impacted secondary meaning, it cannot serve as a basis for showing secondary meaning." *Honestech*, 725 F. Supp. 2d at 579; *see, e.g.*, *Boulle*, 2014 WL 4413603, at *10 ("There is no evidence of how the jewelry sales by the different Boulle-named businesses impacted the secondary meaning of the BOULLE mark."); *Half Price Books*, 2003 WL 23175436, at *4 ("This unadorned statement [about total sales], absent supporting evidence demonstrating how Half Price's annual sales impact secondary meaning to the mark 'Half Price Books,' cannot serve as a basis for secondary meaning.").

**D.     Likelihood of Confusion**

13. To determine the likelihood of confusion, courts in the Fifth Circuit consider a non-exhaustive list of "digits," which include "(1) strength of the mark; (2) mark similarity; (3) product or service similarity; (4) outlet and purchaser identity; (5) advertising media identity; (6) defendant's intent; (7) actual confusion; and (8) care exercised by potential purchasers." *All. for Good Gov't v. Coal. for Better Gov't*, 901 F.3d 498, 508 (5th Cir. 2018). The showing required is a "probability" rather than a "mere possibility" of confusion. *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 226 (5th Cir. 2009). The marks should be considered "in the context that a customer perceives them in the marketplace, which includes their presentation in advertisements." *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 485 (5th Cir. 2004) (internal quotations omitted) (citing *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 197 (5th Cir.1998))."No single factor is dispositive." *Bd. of Supervisors for Louisiana State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 478 (5th Cir. 2008). "The digits may weigh differently from cases to case, 'depending on the particular facts and circumstances involved.'"

*Xtreme Lashes*, 576 F.3d at 227 (quoting *Marathon Mfg. Co. v. Enerlite Prods. Corp.*, 767 F.2d 214, 217 (5th Cir.1985)). Similarly, Courts must consider the application of each digit in light of the specific circumstances of the case; otherwise, there is a risk of inadvertently lowering the standard of confusion. *Springboards to Educ. v. Houston Indep. Sch. Dist.,* 912 F.3d 805 (5th Cir. 2019). As part of considering the digits, Courts must also consider the class of consumers at risk of confusion and the point in the transaction at which the risk of confusion arises. *Springboards to Educ.* 912 F.3d at 812.

14. **Strength of the mark**. This digit holds that "[t]he more distinctive the mark, the stronger the mark." *Viacom Int'l v. IJR Capital Investments, L.L.C.*, 891 F.3d 178, 193 (5th Cir. 2018). The strength of a mark is determined by its classification on the distinctiveness spectrum—generic, descriptive, suggestive, arbitrary, or fanciful—and the mark's standing in the marketplace. *All. for Good Gov't v. Coal. for Better Gov't*, 901 F.3d 498, 509 (5th Cir. 2018). A mark that "is merely descriptive is considered 'weak.'" *Serv. Merch. Co. v. Serv. Jewelry Stores, Inc.*, 737 F. Supp. 983, 998 (S.D. Tex. 1990); *see also King-Size, Inc. v. Frank's King Size Clothes, Inc.*, 547 F. Supp. 1138, 1160 (S.D. Tex. 1982) ("[T]he Court concludes on the basis of its prior analysis in this regard that the mark "king size" is descriptive and thus a weak mark."); *Texas Dairy Queen Operators Council v. Feed Store, Inc.*, 1986 WL 15609, at *4 (N.D. Tex. Oct. 8, 1986) ("Recall that descriptive marks are considered weak marks."). When evaluating the strength of a mark, the Fifth Circuit also looks to "the extent of third-party usage of similar marks," including "third-party usage of a mark on *unrelated* goods and services." *Quantum Fitness Corp. v. Quantum LifeStyle Centers, L.L.C.*, 83 F. Supp. 2d 810, 820 (S.D. Tex. 1999) (emphasis in original). "'The greater the number of identical or more or less similar trade-marks already in use on different kinds of goods, the less is the likelihood of confusion . . . .'" *Amstar*

*Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 260 (5th Cir. 1980) (quoting RESTATEMENT OF TORTS § 729 cmt. G (1938))); *see Quantum Fitness*, 83 F. Supp. 2d at 820 (quoting *Amstar* language).

15. **Mark Similarity.** This digit "requires consideration of the marks' appearance, sound, and meaning." *Viacom Int'l*, 891 F.3d at 193 (internal quotations omitted). "Similarity of appearance is determined on the basis of the total effect of the designation, rather than on a comparison of individual features." *Xtreme Lashes*, 576 F.3d at 228 (internal quotations omitted). Courts look to "the context of use, such as labels, packaging, and advertising." *Id*. The marks should be considered in the context that a customer perceives them in the market place. *Scott Fetzer*, 381 F.3d at 485. "Similarity of appearance is determined on the basis of the total effect of the designation, rather than on a comparison of individual features." *Xtreme Lashes,* 576 F.3d at 228 (internal quotations omitted); *Exxon Corp. v. Texas Motor Exch. of Houston, Inc.*, 628 F.2d 500, 505 (5th Cir. 1980). "[T]he use of identical dominant words does not automatically equate to similarity between marks." *Springboards To Educ., Inc. v. Houston Indep. Sch. Dist.*, 912 F.3d 805, 815 (5th Cir. 2019), *as revised* (Jan. 29, 2019), *as revised* (Feb. 14, 2019). In comparing the marks, one should consider the "labels, packaging, and advertising." *Xtreme Lashes,* 576 F.3d at 228. "[I]t is necessary to consider the full names of the parties to determine whether the defendant's name invites or avoids confusion." *Safeway Stores, Inc. v. Safeway Ins. Co.*, 657 F. Supp. 1307, 1314 (M.D. La. 1985), *aff'd* 791 F.2d 929 (5th Cir. 1986) (citing *Sec. Ctr., Ltd. v. First Nat. Sec. Centers*, 750 F.2d 1295, 1302 (5th Cir. 1985)).

16. **Similarity of Products or Services.** In general, the greater the similarity between the products and services, the greater the likelihood of confusion, and vice versa. *All. for Good Gov't v. Coal. for Better Gov't*, 901 F.3d 498, 512 (5th Cir. 2018).

17. ***Identity of Retail Outlets and Purchasers.*** "Dissimilarities between the retail outlets and the predominant consumers of plaintiff's and defendants' goods lessen the possibility of confusion, mistake, or deception." *Amstar*, 615 F.2d at 262. One should consider the core consumers of the parties' goods or services in evaluating this factor. *Viacom Int'l*, 891 F.3d at 194 ("[T]he core consumers of each mark are dissimilar.").

18. ***Identity of Advertising Media Used.*** This digit should be evaluated by considering whether the parties advertise "in the same or similar media." *Cross Trailers, Inc. v. Cross Trailer Mfg. & Sales, LLC*, 363 F. Supp. 3d 774, 791 (W.D. Tex. 2018) (quoting *All. for Good*, 901 F.3d at 512). In general, the greater the similarity in advertising campaigns, the greater the likelihood of confusion, and vice versa. *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 455 (5th Cir. 2017).

19. ***Intent***. The "intent inquiry focuses on whether the defendant intended to derive benefits from the reputation of the plaintiff." *Streamline Prod.*, 851 F.3d at 455. "If the defendant acted in good faith, then this digit of confusion becomes a nonfactor in the likelihood-of-confusion analysis, rather than weighing in favor of a likelihood of confusion." *Elvis Presley Enterprises, Inc. v. Capece*, 141 F.3d 188, 203 (5th Cir. 1998).

20. ***Actual confusion***. Actual confusion is the best evidence of a likelihood of confusion. *Viacom Int'l*, 891 F.3d at 197 (citing *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 203–04 (5th Cir. 1998)). "[A] plaintiff may rely on anecdotal instances of consumer confusion." *Scott Fetzer*, 381 F.3d at 486. However, when providing anecdotal instances of confusion competent evidence must connect the instances to representations by the defendant. *Id*. Evidence from non-consumers is to be afforded little weight. *Firebirds Int'l, LLC v. Firebird Rest. Group, LLC*, 3:17-CV-2719-B, 2019 WL 3842845, at *9 (N.D. Tex. Aug. 15, 2019);

11

*Healix Infusion Therapy, Inc. v. Healix, Inc.*, 2018 WL 1801149, at *19 (S.D. Tex. Apr. 16, 2018); *Soc'y of Fin. Examiners v. Nat'l Ass'n of Certified Fraud Examiners Inc.*, 41 F.3d 223, 228 (5th Cir. 1995). Inquiries by consumers or others about whether there is an affiliation or other relationship between parties, should also be given little weight. *Brennan's, Inc. v. Brennan*, 512 F.Supp.2d 559, 571 (S.D.Miss. 2007) (citing R. Kirkpatrick, LIKELIHOOD OF CONFUSION IN TRADEMARK LAW § 7.5 (2006)). As confirmed by other Courts, there "is a difference between isolated expressions of momentary confusion and **confusion that leads to actual purchasing decisions**." *Trustees of Columbia Univ. Columbia/HCA Healthcare Corp.*, 964 F. Supp. 733, 747 (S.D.N.Y.1997); *see also Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 269 F.3d 114, 124 (2d Cir. 2001) (Inquiries about the relationship between an owner of a mark and an alleged infringer do not amount to actual confusion and are arguably premised upon a lack of confusion between the products such as to inspire the inquiry itself.)

21. "Factors that weigh against finding actual confusion include the frequency of actual confusion compared to the period the junior user allegedly made sales under the offending mark." *T-Mobile US, Inc. v. AIO Wireless LLC*, 991 F. Supp. 2d 888, 923 (S.D. Tex. 2014). "An absence of, or minimal, actual confusion . . . over an extended period of time of concurrent sales weighs against a likelihood of confusion." *Elvis*, 141 F.3d at 204. In light of the period of concurrent business, the "inability to point to a single incident of actual confusion is highly significant." *Oreck Corp. v. U.S. Floor Sys., Inc.*, 803 F.2d 166, 173 (5th Cir. 1986).

22. **Degree of Care Exercised by Potential Purchasers.** "The greater the care potential purchasers exercise, the less likely it is they will confuse a junior mark user's products or services with the senior mark user's products or services." *Springboards To Educ., Inc. v. Houston Indep. Sch. Dist.*, 912 F.3d 805, 817 (5th Cir. 2019), *as revised* (Jan. 29, 2019), *as*

*revised* (Feb. 14, 2019). Persons buying for professional or institutional purposes "are virtually certain to be informed, deliberative buyers." *Oreck Corp.*, 803 F.2d at 173; *see also Springboards To Educ.*, 912 F.3d at 817. In evaluating this digit, one should consider the amount of diligence and communication which takes place before any purchasing decisions, as well as the magnitude of the transactions. *Streamline Prod.*, 851 F.3d at 458.

CHAMBERLAIN, HRDLICKA, WHITE,

WILLIAMS & AUGHTRY

By: */s/ Justin E. VandenBout*
    Collin A. Rose
    Attorney-in-Charge
    State Bar No. 24013419
    Federal Bar No. 25832
    collin.rose@chamberlainlaw.com
    Justin E. VandenBout
    State Bar No. 24060765
    Federal Bar No. 912644
    justin.vandenbout@chamberlainlaw.com
    Diana Perez Gomez
    State Bar No. 24060765
    Federal Bar No. 912644
    Diana.gomez@chamberlainlaw.com
    1200 Smith Street, Suite 1400
    Houston, Texas 77002
    Phone: (713) 658-1818
    Fax: (713) 658-2553

**ATTORNEYS FOR DEFENDANTS**